**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CASE NO.    1:25-MJ-204** |
| | : | |
| **HENRRY JOSUE VILLATORO SANTOS** | : | |
| | : | |
| **Defendant.** | : | |

**REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**MOTION TO DELAY ENTRY OF DISMISSAL ORDER**

The Defendant, Henrry Villatoro Santos, by counsel, submits this reply to the Government's Response in Opposition to his Motion to Delay Entry of a Dismissal Order. Dkt. # 17. The Government asks the Court to immediately grant its motion to dismiss and to deny Mr. Villatoro Santos's motion to delay entry of a dismissal order, arguing that the Court has "highly limited discretion" to deny the Government's motion to dismiss pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure and that there is "no authority" for the Court to delay the entry of a dismissal order upon the Government's request. For the following reasons, the Government's arguments fail under scrutiny.

First, the Government has failed to comply with its obligation to disclose the reason(s) for its Motion to Dismiss, a prerequisite for this Court's exercise of its supervisory authority under Rule 48(a). Rule 48(a) provides: "The government may, *with leave of court*, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a) (emphasis added). By requiring "leave of court" for dismissals by the Government, the Federal Rules of Criminal Procedure deliberately altered the common-law rule, under which a prosecutor could "enter a *nolle prosequi* in his discretion,

1

without any action by the court." Fed. R. Crim. P. 48(a) advisory committee's note to 1944 adoption 1.

The Government correctly notes that the discretion of the Court in this regard is limited. *See United States v. Goodson*, 204 F.3d 508, 512 (4th Cir. 2000) ("[T]he court's discretion in considering the Government's motion to dismiss is limited."). But Rule 48(a) requires more of a court than to "serve merely as a rubber stamp for the prosecutor's decision." *United States v Ammidown*, 497 F.2d 615 (D.C. Cir. 1974). The amount of discretion conferred by the "leave of court" clause is best explained as follows:

> It seems altogether proper to say that the phrase "by leave of court" in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. But this is not to say that the Rule was intended to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the laws are faithfully executed. The Rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power. The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest. In this way, the essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values.

*United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995) (quoting *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975)).

Stated otherwise, Rule 48(a) "contemplates a division of labor consistent with the constitutional design, which 'enjoins upon its branches separateness but interdependence, autonomy but reciprocity.'" *United States v. Eric Adams*, 1:24-cr-556 (S.D.N.Y. April 2, 2025) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring)). To that end, Rule 48(a) has procedural and substantive requirements. As a matter of procedure, "in the exercise of its responsibility, the court will not be content with a mere

2

conclusory statement by the prosecutor that dismissal is in the public interest, but will require a statement of reasons and underlying factual basis." *Ammidown* 497 F. 2d at 620. As a matter of substance, "the court does not have primary responsibility, but rather the role of guarding against abuse of prosecutorial discretion." *Id.* In the final analysis, "the disposition of a government's motion to dismiss an indictment should be decided by determining whether the prosecutor acted in good faith at the time he moved for dismissal." *United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995).

So the Government's memorandum begs the question: how is the Court to determine whether the Government is acting in bad faith, or whether its motion to immediately dismiss the case is "clearly contrary to manifest public interest,"[1] without any disclosure by the Government of its reason(s) for the instant motion? How is the Court to exercise its discretion as a co-equal branch of government, rather than a rubber stamp, if it signs off on the Government's motion to dismiss that is predicated on no more than the terse statement: "[T]he government no longer wishes to pursue the instant prosecution at this time."?

Following the Supreme Court's decision in *Rinaldi v. United States*, 434 U.S. 22 (1977), courts have discerned that "[t]he primary concern" underlying Rule 48(a)'s "leave of court" provision "was that of protecting a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution." *Ammidown*, 497 F.2d at 620; *see also United States v. Friedman*, 107 F.R.D. 736, 740 (N.D. Ohio 1985) ("[T]he words of

---

[1] *See United States v. Graves*, 846 F. App'x 170, 173 (4th Cir. 2021) ("Indeed, the court must grant the [G]overnment's Rule 48(a) motion unless the court concludes that to grant it would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith.").

reservation inserted into Rule 48(a) ['leave of court'] . . . are for the ultimate benefit and protection of the people themselves."). Here, the Government has made clear through public pronouncements its intent to hand over Mr. Villatoro Santos to the Salvadoran authorities so that he can be imprisoned there through a process in which there are no due process requirements to observe, no constitutional rights to protect, and no judicial oversight. This is precisely the type of evil against which the "leave of court" clause in Rule 48(a) seeks to protect.

One the one hand, if the Government intends to follow the law in its pursuit of Mr. Villatoro Santos's removal—that is to serve him with a Notice to Appear (which it has not done to date), provide him with a Section 240 hearing, ensure his right to counsel is not infringed, and allow him the ability to contest his removability in immigration proceedings—then the Government's motion to dismiss is not made in bad faith and is not clearly contrary to manifest public interest. On the other hand, if, as its public statements and its conduct to date strongly suggest, the Government intends to summarily deport Mr. Villatoro Santos by whisking him onto a plane to El Salvador without notice and a right to be heard in immigration proceedings, then the dismissal of the instant case at this time would clearly be done in bad faith and would be manifestly contrary to public interest. It does not serve the public interest, nor is it an act of good faith, for the Government to rush to deprive this Court of jurisdiction over Mr. Villatoro Santos if its aim is to thereafter deprive him of his well-established constitutional right to due process of law.

Put simply, in order for this Court to be in a position to exercise its supervisory authority under Rule 48(a), the Government must disclose to the Court: (1) the factual basis for its motion to dismiss; and (2) whether, upon the dismissal of this case, it intends to comply with the law and place Mr. Villatoro Santos in ordinary removal proceedings with all the attendant due process rights, or whether it intends to summarily deport him without due process as it has done to hundreds

of others. Without these disclosures, the Court cannot properly exercise its discretion in determining whether the Government is in fact acting in good faith as it asserts or simply using the Court to facilitate an impending violation of the Constitution.[2]

The Government's rush to "swiftly" enter a dismissal order so that it can carry out the threats of immediate deportation to El Salvador propounded by top government officials, and to do so as quickly as possible to ensure that Mr. Villatoro Santos is not adequately represented by immigration counsel or in a position to defend himself, is no basis for this Court to abdicate its obligation to review the Executive's actions. That exercise of judicial oversight, which is demanded by Rule 48(a), necessitates some delay in order for the Court to get the answers it needs from the Government to make its ultimate determination.

Second, the Government's argument that there is "no legal basis" for the Court to delay issuing a ruling on the motion to dismiss is without merit. As an initial matter, the Government is the moving party: it is the Government's Motion to Dismiss that is pending before the Court. As the movant, it bears the burden of production and persuasion, a burden it has yet to meet. As for the request for a delay, while the Court's discretion in ultimately ruling on the Government's motion to dismiss is indeed limited, its discretion in determining the appropriate timing of such an order is not, particularly where, as in here, the necessary factual record has not been developed. *See, e.g.*, *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 187 (4th Cir. 1993) ("It was not an abuse of discretion to delay ruling on the standing issue until discovery of the relevant

---

[2] Even in cases in which a defendant does not object to a motion to dismiss, the Court nonetheless must exercise its supervisory authority before entering a dismissal order as outlined above. *See, e.g.*, *United States v. Hamm*, 659 F.2d 624, 629 (5th Cir. 1981) ("The district court may not deny a government motion to dismiss a prosecution, consented to by the defendant, *except in those extraordinary cases where it appears the prosecutor is motivated by considerations clearly contrary to the manifest public interest*.") (emphasis added).

underlying facts was complete. . . . Indeed, to rule otherwise would run the risk of rewarding a party's noncooperation or compelling the district court to rule on a sensitive matter . . . before the full facts were even before it."); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").[3] Nor has the Government provided any reason for the rush to immediately dismiss the case.

The timeline of the litigation in the recent case of New York City Mayor Eric Adams, by way of example, demonstrates the discretion that this Court has to fully develop the record before entering a final dismissal order. *See United States v. Eric Adams*, 1:24-cr-556 (S.D.N.Y. April 2, 2025). There, the Government filed a motion to dismiss the case without prejudice on February 14, 2025. *See id.*, Dkt. # 122. Unlike in this case, that motion provided the basis for the Government's motion, and it indicated that "Defendant Eric Adams has consented in writing to this motion." *Id.* Nonetheless, the court there did not immediately grant the motion. In fact, the court did not rule on the motion until April 2, 2025, at which time it dismissed the case *with prejudice* after developing the record necessary to rule on the motion. *Id.* Dkt. # 177. In other words, while the Court's *ultimate* ruling on the motion to dismiss may appear to be a foregone conclusion based on the Court's narrow discretion, the Court must nonetheless undertake the appropriate steps to arrive at its conclusion.

Third, and perhaps most disturbingly, the Government's response fails to mention, let alone attempt to dispel, the central concern underlying Mr. Villatoro Santos's motion—namely, that the

---

[3] *See also United States v. Ford*, No. 3:09-CR-107, 2019 U.S. Dist. LEXIS 160817, at *4 (W.D.N.C. Sep. 20, 2019) ("This Court has "broad discretion" to stay its proceedings pending the resolution of independent proceedings occurring elsewhere.").

Government likely intends to summarily deport him to El Salvador in violation of the law and without any due process. On the contrary, public pronouncements by government officials since the filing of Mr. Villatoro Santos's motion raise even more concerns about the Government's intentions. Mr. Villatoro Santos filed his Motion to Delay Entry of a Dismissal Order on April 9, 2025 at 7:28 pm. Dkt. # 15. Later that evening, Attorney General Pamela Bondi said in a statement: "As a terrorist, he will now face the removal process."[4] The next morning, Virginia Governor Glenn Youngkin, who was directly involved in coordinating the arrest of Mr. Villatoro Santos, said the following to Fox News about Mr. Villatoro Santos's case: "The charges from the Department of Justice under [Attorney General Pam Bondi] were dropped *so that the person can be deported immediately* and get out of this country and *go back to prison in El Salvador*." (emphasis added).[5] In other words, not only has the Government said nothing to dispel the serious concerns that it may be intending to disregard Mr. Villatoro Santos's due process rights, but its public statements and its actions in other cases since the filing of Mr. Villatoro Santos's motion only amplify those concerns.

Justice Sotomayor did not mince words in her recent dissenting opinion in *Donald Trump v. J.G.G., et al.*, 604 U.S. __ (2025), writing that "the Government has largely ignored its obligations to the rule of law" in its handling of the summary deportations of alleged members of Tren de Aragua to El Salvador. And since those summary deportations without due process, the administration has publicly stated its intent to expand its invocation of the Alien Enemies Act beyond suspected members of Tren de Aragua. On April 8, 2025, one day before the Government

---

[4]  *See* https://www.politico.com/news/2025/04/09/drop-criminal-case-man-called-gang-leader-00283355to drop criminal case against man they previously called a major gang leader - POLITICO

[5]  *See* https://www.wvtf.org/news/2025-04-10/youngkin-backs-removal-of-alleged-ms-13-gang-leader-without-trial

moved to dismiss this case, acting Immigration and Customs Enforcement Director Todd Lyons told reporters that the administration is looking to invoke the Alien Enemies Act to deport alleged members of MS-13.[6]

In this rushed and chaotic push for maximum immigration enforcement, it is now undisputed that the government has wrongfully deported individuals who should never have been removed, individuals with protected status like Kilmar Abrego Garcia, who was sent to CECOT without any due process, despite a 2019 court order that held that he may not be removed based on a credible fear of persecution. *Kristi Noem v. Kilmar Armando Abrego Garcia*, 604 U.S. __ (2025) ("The United States acknowledges that Abrego Garcia was subject to a withholding order forbidding his removal to El Salvador, and that the removal to El Salvador was therefore illegal. The United States represents that the removal to El Salvador was the result of an 'administrative error.'").

In its litigation of both *J.G.G. and* the *Abrego Garcia* case, the administration has made it clear that it will do what it pleases, regardless of court orders. In *J.G.G.*, it openly defied Judge Boasberg's orders, then attacked him personally and publicly. In *Abrego Garcia*, the Supreme Court declined to overrule the order of the District Court that the Government must "facilitate" Abrego Garcia's return, remanding the matter to the District Court for clarification of its order. *Abrego Garcia*, 604 U.S. __ (2025). In a hearing before U.S. District Judge Paula Xinis on April 11, 2025, following remand, the Government claimed to have no information on the whereabouts of Mr. Abrego Garcia and provided no information on steps taken by the administration to comply with its order.[7]  Judge Xinis issued an Order on April 11, 2025 finding that the Government had

---

[6] *See https://apnews.com/article/alien-enemies-trump-immigration-deportations-21a62ede23b8c493b60d00a9c125722f*
[7] *See* https://www.cnn.com/2025/04/11/politics/kilmar-abrego-garcia-hearing/index.html

failed to comply with the Court's prior Order directing it to file a supplemental declaration regarding the location and custodial status of Abrego Garcia and the steps taken to facilitate his return. *Abrego Garcia v. Kristi Noem*, 8:25-cv-951 (D. M.D. April 11, 2025) (Dkt. #61). The Order noted that the government "made no meaningful effort to comply" and "[i]nstead, they complained that the Order is 'unreasonable and impracticable,' and involves 'sensitive country-specific considerations wholly inappropriate for judicial review.'" *Id.* The court ordered the Government to file daily updates under oath starting on April 12, 2025. After providing barebones "updates" to the Court, the Government filed a pleading on April 13, 2025, arguing that the court's order that the government must facilitate the return of Mr. Abrego Garcia means no more than that the government must allow him to enter the U.S. if he somehow finds a way out of CECOT in El Salvador and returns to the United States. *Id.* Dkt. #65. Plainly put, even when the Government concedes it has made a mistake in deporting an individual to an almost-certain life sentence, or worse, in one of the worst prisons in the world, its position is that it has no duty to do anything to request or advocate for his return from the Salvadoran government (which is receiving millions of dollars from the United States to house deported immigrants).[8]

Against this background, the risk that Mr. Villatoro Santos will face a similar fate, an irrevocable, life-altering fate from which this Court will not be able to offer any relief once it loses jurisdiction over Mr. Villatoro Santos, is palpable. The Government has wholly sidestepped the central question of whether it intends to disregard Mr. Villatoro Santos's right to due process of

---

[8] *See* https://www.cnn.com/2025/03/17/americas/el-salvador-prison-trump-deportations-gangs-intl-latam/index.html

law in its very public effort to score a political win by summarily deporting a young man it has labeled as a "terrorist" and as "horrible, violent, worst of the worst criminals."[9]

"It is well established that the Fifth Amendment entitles aliens to due process of law" in the context of removal proceedings. *Reno v. Flores*, 507 U. S. 292, 306 (1993).[10] The Government has disregarded this well-established principle and defied court orders in the process in other cases, effectively carrying out forcible disappearances to the black hole that is CECOT.[11]  Its public statements in this case strongly indicate it may intend to do so again with Mr. Villatoro Santos. And the Government's response memorandum does nothing to mitigate the very real concern that it plans to once again disregard the law in pursuit of favorable headlines.  If the undersigned is simply wrong about all of this, then the Government should have no qualms about providing the necessary information to this Court regarding the steps it intends to take in pursuit of removal upon the dismissal of this case.

Finally, the Government has not identified in any meaningful way how it would be prejudiced if the Court were to take its motion to dismiss under advisement and allow Mr. Villatoro Santos additional time to ensure he is adequately represented in immigration proceedings.  Mr.

---

[9]    *See*    https://www.wfft.com/news/justice-department-dropping-charges-against-man-they-accused-of-being-ms-13-s-leader-for/article_b8217760-86c4-5975-9362-eac1205fc814.html

[10] The Supreme Court reaffirmed this principle in its opinion in the *J.G.G.* case, holding that individuals alleged to be members of Tren de Aragua have a right to notice and to be heard before their removal. *Trump v. J.G.G.*, 604 U.S. _ (2025) ("AEA detainees must receive notice after the date of this order that they are subject to removal under the Act. The notice must be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs.").

[11]  Shuham, *Judges, Attorneys Face Trump's Salvadoran Black Hole*, *available at* https://www.huffpost.com/entry/cecot-el-salvador-lawyers-judges-ice-custody_n_67f980e4e4b05c9df5d3a9ad?utm_campaign=share_email&ncid=other_email_o63gt2jcad4 ("The fact pattern of the detainees sent to El Salvador 'fits every definition of an enforced disappearance under international law,' said Denise L. Gilman, who co-directs the immigration clinic at the University of Texas School of Law.").

Villatoro Santos is in custody, and he continues to be subject to an ICE detainer. The Government's ability to *legally* pursue his removal in immigration proceedings does not diminish by the day. The only reason for the Government to so vociferously oppose the request for a delay in finalizing the case to allow Mr. Villatoro Santos to obtain immigration counsel is if it in fact intends to "immediately deport" him as threatened in its public statements. In that case, the Court cannot and should not facilitate such a lawless goal. In the words of Justice Felix Frankfurter:

> There can be no free society without law administered through an independent judiciary. If one man can be allowed to determine for himself what is law, every man can. That means first chaos, then tyranny. Legal process is an essential part of the democratic process. For legal process is subject to democratic control by defined, orderly ways which themselves are part of law. In a democracy, power implies responsibility. The greater the power that defies law the less tolerant can this Court be of defiance. As the Nation's ultimate judicial tribunal, this Court, beyond any other organ of society, is the trustee of law and charged with the duty of securing obedience to it.

*United States v. United Mine Workers*, 330 U.S. 258, 312 (1947).

For these reasons, Mr. Villatoro Santos respectfully moves the Court to take the Government's Motion to Dismiss under advisement; to direct the Government to disclose the information necessary for this Court to determine the basis of its Motion to Dismiss, including specifically whether it intends to "summarily deport" Mr. Villatoro Santos; to grant his Motion to Delay Entry of a Dismissal Order; and for such further relief as the Court deems necessary and appropriate.

Respectfully Submitted,
Henrry Villatoro Santos
By Counsel

ELSAYED LAW PLLC

11

BY: _____/s/_____
    Muhammad Elsayed
    Virginia Bar No. 86151
    3955 Chain Bridge Road
    Second Floor
    Fairfax, Virginia 22030
    (703) 884-2636
    (703) 884-2637 (fax)
    me@elsayedlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing pleading was filed electronically using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

    _____/s/_____
    Muhammad Elsayed
    Virginia Bar No. 86151
    3955 Chain Bridge Road
    Second Floor
    Fairfax, Virginia 22030
    (703) 884-2636
    (703) 884-2637 (fax)
    me@elsayedlaw.com